**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
THEODORE "TED" HOMMEL,

                  Plaintiff,

                                          **DECISION AND ORDER**
          -against-                           13-cv-3261 (ADS)(ARL)

THE CITY OF LONG BEACH, NEW YORK,
JACK SCHNIRMAN, AS CITY MANAGER
OF LONG BEACH, and JACK SCHNIRMAN,

                  Defendants.
-------------------------------------------------------X
**APPEARANCES:**

**Law Offices of Francis McQuade**
*Attorneys for the Plaintiff*
116 East Park Avenue
Long Beach, NY 11561
        By:  Francis X. McQuade, Esq., Of Counsel

**Bond, Schoeneck & King, PLLC**
*Attorneys for the Defendants*
1399 Franklin Avenue, Suite 200
Garden City, New York 11530
        By:  Richard S. Finkel, Esq.
             Howard M. Miller, Esq., Of Counsel


**SPATT, District Judge.**

      On June 7, 2013, the Plaintiff Theodore "Ted" Hommel (the "Plaintiff") commenced this

action under 42 U.S.C. § 1983; the First and Fourteenth Amendments to the United States

Constitution; and New York State Labor Law § 201(d).  Presently pending before the Court is a

motion by the Defendants City of Long Beach (the "City") and Jack Schnirman

("Schnirman")(collectively the "Defendants") pursuant to Federal Rule of Civil Procedure ("Fed.

R. Civ. P.") 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief can be

granted.  For the following reasons, the motion is granted.

1

# I.       BACKGROUND

The following facts are drawn from the complaint and construed in a light most favorable to the non-moving party, the Plaintiff.

The Plaintiff, an attorney, served as an Assistant Corporation Counsel for the City since January 2011 until May 2013.

The City is a municipal city located in Nassau County.  The City is governed by a City Manager, who is appointed by an elected City Council.  Schnirman has served as the City Manager since January 1, 2012.  The role of the City Manager includes the hiring and firing of City personnel.

On May 6, 2013, the Plaintiff, a Republican, announced his candidacy for Long Beach City Court Judge.  On May 8, 2013, in a two sentence letter from the City Manager, the Plaintiff was fired, effective immediately.  There were no reasons cited for the dismissal.

The Plaintiff contends that his discharge resulted from political motives and retribution.  According to the Plaintiff, the incumbent City Court Judge is a Democrat; the City Council majority is Democratic; and the City Manager is a Democrat.

The Plaintiff further asserts that he never received a complaint about his work.  The Plaintiff insists that his candidacy would not have interfered with his duties as Assistant Corporation Counsel.

On June 7, 2013, the Plaintiff brought the instant action against the City and Schnirman, in his official and individual capacities.  On August 9, 2013, the Defendants moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## II.    DISCUSSION

A.  <u>The Motion to Dismiss Standard Under Fed. R. Civ. P. 12(b)(6)</u>

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint for a plaintiff's failure "to state a claim upon which relief can be granted."  In order "[t]o survive a motion to dismiss under [Rule 12(b)(6) ], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  In assessing plausibility on a motion to dismiss pursuant to Rule 12(b)(6), the court must "assume [the] veracity" of all well-pleaded factual allegations contained in the complaint, <u>Iqbal</u>, 556 U.S. at 664, and afford the plaintiff every reasonable inference. <u>Harris v. Mills</u>, 572 F.3d 66, 71 (2d Cir. 2009).  However, allegations must consist of more than mere labels, legal conclusions, or a "formulaic recitation of the elements of a cause of action," and bare legal conclusions are "not entitled to the assumption of truth." <u>Iqbal</u>, 556 U.S. at 681 (internal quotation marks and citations omitted).

According to <u>Iqbal/Twombly</u>, the complaint survives a motion to dismiss, as long as its allegations of "factual matter, accepted as true" sufficiently "raise a right to relief above the speculative level." <u>Iqbal</u>, 556 U.S. at 678; <u>Twombly</u>, 550 U .S. at 555–56.  At the same time, the Complaint cannot conclusorily recite the elements of a claim. <u>Ibid</u>.  The factual allegations are sufficient when they allow this Court, at a minimum, to infer that a claim is plausible – an inference which is more than possible, but less than probable – and thereby warrants proceeding with discovery. <u>Ibid</u>.

B.  The Official Capacity Claims Against Schnirman

Official-capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent,'" Kentucky v. Graham, 473 U.S. 159, 165-66, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n. 55, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)), and courts routinely dismiss official capacity claims where the plaintiff also sues the municipality, see e.g., Thomas v. Venditto, 925 F. Supp. 2d. 352, 365 (E.D.N.Y. 2013); Volpe v. Nassau Cnty., 915 F. Supp. 2d 284, 298 (E.D.N.Y. 2013).  Accordingly, the Section 1983 claims against Schnirman in his official capacity as the City Manager are dismissed.

C.  The First Amendment Claims Against Schnirman in his Individual Capacity and the City

Although public employees generally may not be discharged for exercising their First Amendment rights, Elrod v. Burns, 427 U.S. 347, 360, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976); accord Kaluczky v. City of White Plains, 57 F.3d 202, 208 (2d Cir. 1995), the Supreme Court has created an exception to this rule for "policy-making and confidential employees," for whom political viewpoints are permissible employment criteria and who, accordingly, "may be discharged by reason of political affiliations, political beliefs, ideological viewpoints or partisan activity." Kaluczky, 57 F.3d at 208 (internal quotation marks and citations omitted). Specifically, the rule as summarized by the Court in Rutan v. Republican Party of Illinois, 497 U.S. 62, 110 S. Ct. 2729, 111 L. Ed. 2d 52 (1990):

> In Elrod, we suggested that policymaking and confidential employees probably could be dismissed on the basis of their political views. In Branti [v. Finkel, 445 U.S. 507, 100 S. Ct. 1287, 63 L. Ed. 2d 574 (1980)], we said that a State demonstrates a compelling interest in infringing First Amendment rights only when it can show that "party affiliation is an appropriate requirement for the effective performance of the public office involved."

Id. at 71 n. 5, 110 S. Ct. 2729 (internal citations omitted). The Court in Branti also explained that "the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for effective performance of the public office involved." Branti, 445 U.S. at 518, 100 S. Ct. 1287.

In Vezzetti v. Pellegrini, 22 F.3d 483, 486 (2d Cir. 1994), the Second Circuit noted eight specific factors that can indicate whether a public employee may be subject to partisan-based termination: namely, whether the employee (1) is exempt from civil service protection, (2) has some technical competence or expertise, (3) controls others, (4) is authorized to speak in the name of policymakers, (5) is perceived as a policymaker by the public, (6) influences government programs, (7) has contact with elected officials, and (8) is responsive to partisan politics and political leaders. However, the Second Circuit has emphasized that these factors "should not be mechanically applied, nor should [they] begin and end the analysis." Gordon v. County of Rockland, 110 F.3d 886, 890 (2d Cir. 1997).

The Elrod–Branti inquiry focuses on "the *duties inherent* in the offices held by the plaintiffs," and not what the plaintiffs actually did while in office. Gordon, 110 F.3d at 888 ("The idea that job performance (rather than job description) should control Elrod–Branti analysis has been consistently rejected by this court and others.") (citations omitted). Thus, an employee's argument that he or she was merely "clerical" is unpersuasive where that employee's own description of his or her position indicates that it is confidential and involves close and substantial contact with policymaking officials. See Stott v. Martin, 725 F. Supp. 1365, 1434 (E.D.N.C. 1989), rev'd sub nom. on other grounds Stott v. Haworth, 916 F.2d 134 (4th Cir. 1990). Although the determination of whether an employee is exempt from First Amendment

protection under <u>Elrod–Branti</u> is thus "inherently fact-specific in that it requires a court to examine the nature of the responsibilities of the particular job at issue," <u>Wetzel v. Tucker</u>, 139 F.3d 380, 383-84 (3d Cir. 1998), the Second Circuit treats the issue as one of law. <u>See</u> <u>Gordon</u>, 110 F.3d at 888-89.

In this case, the Court takes judicial notice of the Plaintiff's job description, which provides as follows:

ASSISTANT CORPORATION COUNSEL

GENERAL STATEMENT OF DUTIES: Assists the corporation counsel in drafting legal instruments, in preparing opinions, and in performing a wide variety of other legal tasks; does related work as required.

DISTINGUISHING FEATURES OF THE CLASS: The work involves assisting the corporation counsel in the preparation, argument, and conducting of important cases or proceedings in which the city or a city department or officer is interested or a party. The work is performed under the general supervision of the corporation counsel.

EXAMPLES OF WORK: (Illustrative only)

Institutes action in tax lien foreclosures;

Collects back taxes, fines or penalties and assists in enforcing laws and city ordinances;

Conducts hearings on claims against the city;

Confers with department heads, contractors, and representatives of private law firms on legal problems;

Assists the corporation counsel in representing the city in the trial of court cases involving the city;

Drafts legal instruments, prepares opinions, and performs a wide variety of legal work as assigned;

May act as counsel to a board or commission.

(Miller Aff., Exh. B.)

The Long Beach City Code provides, among other things, that the Assistant Corporation Counsel is responsible for counseling the City Manager on the issue of a City officer or employee's entitlement to defense and indemnification against claims, and if so, for providing that defense and indemnification. The relevant provisions state as follows:

> Sec. 15-a. – Defense and indemnification of city officers and employees.
>
> A. The City of Long Beach hereby elects to confer upon its officers and employees, as defined in Subsection C below, the benefits provided by Chapter 277 of the Laws of 1981 and Section 18 of the Public Offices Law and to be held liable for the costs incurred under the provisions of such law for the defense and indemnification of its officers and employees.
>
> . . .
>
> C. Intent; definitions; defense and indemnification; conditions; limitations.
>
> . . .
>
> (2) Definitions. As used in this section, the following terms shall have the meanings indicated:
>
> . . .
>
> (b) CORPORATION COUNSEL – The duly appointed Corporation Counsel or such Deputy Corporation Counsel or Assistant Corporation Counsel designated to act on behalf of the Corporation Counsel.
>
> . . .
>
> (3) City to provide for defense of employees.
>
> (a)  If an employee complies with the provisions of Subsection C(5) of this section, the City, through the office of the Corporation Counsel, or through any applicable insurance program maintained by the City, shall provide for the defense of the employee in any civil action or proceeding in any state or federal court, or any proceeding before an administrative agency, arising out of any alleged act or omission which occurred or is

alleged to have occurred while the employee was acting within the scope of his or her public employment or duties. For purposes of this section, the determination of whether an employee was acting within the scope of his or her employment will be made by the City Manager, upon the advice of the Corporation Counsel, consistent with then prevailing law.

(b) Subject to the conditions set forth in Subsection (a) of this subsection, the employee shall be entitled in such action or proceeding to be represented by the Corporation Counsel, or counsel designated by the Corporation Counsel, at no cost to the employee.

. . .

Sec. 23. – Corporation counsel.

The corporation counsel shall be the official legal advisor of the council and all boards and officers of the city including the assessors. He shall furnish on request written legal opinions to the council or any department of the city. He shall when directed by the council, prosecute and defend all actions and proceedings by and against the city and every department thereof, and perform such other professional services relating to said city as the city manager or council may direct.

(Id., Exh. C.) The Court further notes that the position of Assistant Corporation Counsel is exempt from civil service protection.

As the duties inherent in the position of Assistant Corporation Counsel include litigating cases on behalf of the City and its employees; providing advice to the City Manager and other City officials; and drafting legal documents, the Court finds that this status is a policymaking position outside the protection of the First Amendment.

Indeed, "[f]ederal courts have uniformly held that government attorneys occupy such positions inherently demanding political loyalty, and that they thus fall within the Branti exemption from First Amendment protection." Alberti v. Cnty. of Nassau, 393 F. Supp. 2d 151, 169 (E.D.N.Y. 2005); Gordon, 110 F.3d at 890 (("All circuit court decisions – and almost all

other court decisions –involving attorneys in government service, other than public defenders, have held that Elrod/ Branti do not protect these positions.") (citation omitted); Bavaro v. Pataki, 130 F.3d 46, 50 (2d Cir. 1997)(associate and assistant councils in the New York State Department of Health, Division of Legal Affairs, Bureau of Professional Misconduct, were policymakers exempt from First Amendment protection against political patronage dismissal); Vona v. County of Niagra, 119 F.3d 201, 206 (2d Cir. 1997)(assistant social services attorney was policymaker not entitled to First Amendment protection); see also Aucoin v. Haney, 306 F.3d 268, 275 (5th Cir. 2002) (collecting cases).

Accordingly, the Court finds that the Plaintiff fails to state a Section 1983 First Amendment claim against Schnirman in his individual capacity and the City.

D.  The Equal Protection Claims Against the Schnirman in his Individual Capacity and the City

Turning to the Plaintiff's Equal Protection claims against Schnirman in his individual capacity and the City, "many of the facts he cites are essentially the same as those underlying his First Amendment retaliation claim.  Therefore, to the extent that Plaintiff's equal protection claim is grounded on his contention that he was treated differently because he had exercised his First Amendment rights, the two claims coalesce." Hafez v. City of Schenectady, 894 F. Supp. 2d 207, 225 (N.D.N.Y. 2012), aff'd, 524 F. App'x 742 (2d Cir. 2013); see African Trade & Info. Ctr., Inc. v. Abromaitis, 294 F.3d 355, 363 (2d Cir. 2002) (holding that the plaintiffs' First Amendment and equal protection claims coalesced because the alleged deprivation of equal protection was "punish[ment]" for plaintiffs' exercise of their First Amendment rights); Gentile v. Nulty, 769 F. Supp. 2d 573, 582–83 (S.D.N.Y. 2011) (holding that the claims coalesced because the plaintiff alleged his unequal treatment was retaliation for his prior lawsuits against the same municipal defendant) (quotation and other citation omitted).  "'Where this is the case, the equal protection

claim is dependent on the First Amendment claim; in other words where the First Amendment claim has failed, the equal protection claim fails, too.'" Gentile, 769 F.Supp.2d at 582–83 (quoting Kempkes v. Downey, No. 07 Civ. 1298 (KMK), 2008 WL 852765, *6 (S.D.N.Y. Mar. 31, 2008) (other citations omitted)); see also Cobb v. Pozzi, 363 F.3d 89, 110 (2d Cir. 2004) (quotation omitted).  "Since Plaintiff's First Amendment claim has been dismissed, so too must Plaintiff's equal protection claim insofar as this claim asserts that he was treated differently because he exercised his First Amendment rights." Hafez, 894 F. Supp. 2d at 225.

E.  The State Claims Against Schnirman in his Individual Capacity and Against the City

Finally, the Plaintiff alleges a violation of New York Labor Law § 201-d, which prohibits employers from terminating an individual because of his "political activities outside of working hours, off of the employer's premises and without the use of the employer's equipment or other property, if such activities are legal." NY. Labor Law § 201-d(2)(a).  "Political activities" are further defined as "(i) running for public office, (ii) campaigning for a candidate for public office, or (iii) participating in fund-raising activities for the benefit of a candidate, political party or political advocacy group." N.Y. Labor Law § 201-d(1)(a).

However, "[a]s each of the Plaintiffs' purported federal claims must fail, the next issue is whether the exercise of pendant jurisdiction over their remaining state law claims is appropriate. It is not." Alberti, 393 F. Supp. 2d at 175.  The exercise of pendent jurisdiction is generally a matter for the exercise of a district court's discretion.  However, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988)).  "Since each federal cause of action has now been eliminated from the present case, the exercise of federal supplemental jurisdiction is

clearly unwarranted, and is accordingly declined." <u>Alberti</u>, 393 F. Supp. 2d at 175.  The Court so rules.

### III.    CONCLUSION

For the foregoing reasons, the Defendants' motion to dismiss the complaint is granted and the Plaintiffs' federal law claims are dismissed in their entirety.  The Plaintiffs' New York Labor Law § 201-d claims are dismissed without prejudice.  The Clerk of Court is directed to close this case.

**SO ORDERED.**

Dated: Central Islip, New York
March 14, 2014

*Arthur D. Spatt*
  ARTHUR D. SPATT
United States District Judge
